kmo/kaw

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THOMAS CANAL DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 06-3320-JAR |
| BRAD McCARTER, et al. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

The Court now considers defendant Brad McCarter's Motion for Summary Judgment

(Doc. 40)  filed on May 22, 2008.  Pursuant to D. Kan. R. 6.1(d)(2) plaintiff was required to

respond within twenty-three days; however, nearly two months have elapsed and plaintiff has

failed to oppose the motion.  For the reasons detailed below, summary judgment is granted;

plaintiff's action is dismissed.

**I.      Uncontroverted Facts**

Plaintiff brought this action against Officers Brad McCarter, Dan Geller, and the Topeka

Police Department.  The Topeka Police department was dismissed from this action on June 11,

2007.  The following facts are taken from the record and viewed in the light most favorable to

the plaintiff.  On November 10, 2004, Officers Brad McCarter and Dan Geller were traveling in

their patrol car when Officer McCarter observed plaintiff Thomas Davis in an approaching

vehicle.  Having had many contacts with Davis, being aware that Davis was wanted for

questioning, and knowing that Davis had an outstanding warrant for his arrest, Officer McCarter

decided to follow Davis.  After following Davis, Officer McCarter decided to stop Davis's

vehicle by activating the emergency lights and siren on his patrol car, but Davis did not pull

over.  Instead, he sped towards a residential neighborhood, violating several traffic laws, including running through stop signs and speeding.  Officer McCarter gave chase and saw Davis throw out small plastic baggies from the driver's side window of his car.

Davis drove into an alley and with the vehicle still moving, jumped out and ran back towards the patrol car as it came up behind his car.  As Davis ran by the patrol car, Officer McCarter observed Davis reach in his waistband and retrieve a black gun.  Officer McCarter yelled for Davis to stop and drop his gun several times, calling him by his nickname "T.C." Davis did not stop; instead, Davis kept running.  Officer McCarter was convinced that Davis was a danger to his partner and the community, and had been taught that action is faster than reaction.  From prior contacts with Davis, Officer McCarter knew that weapons had been found in Davis's vicinity.  For instance, Officer McCarter recalled that multiple weapons were found in a raid of a drug house where Davis was suspected of selling drugs.  On another occasion, when Officer McCarter stopped a vehicle in which Davis was traveling, Davis ran and a foot chase ensued.  After the chase, officers found weapons in the vehicle that Davis was traveling in.

Believing that Davis was attempting to reach cover to then turn and fire at he and his partner, Officer McCarter fired two shots at Davis. The shots missed Davis.   Officer McCarter again yelled for Davis to stop and drop his weapon.  Davis ignored his command.  Before Davis turned a corner, Officer McCarter fired a third shot which struck Davis in the back and lead to his apprehension.  When the officers approached Davis, they found a handgun ten to fifteen feet from where Davis was lying.  Davis yelled to Officer McCarter,  "You shot me, you bitch!" Officer McCarter responded, "Oh, I'm a bitch?" and hit him in the neck and side of his face with his hand, causing a bruise.

Officers recovered a Glock 10 mm firearm from the scene.  Because of his criminal

2

history, Davis was prohibited under federal law from possessing a firearm.  During his criminal

prosecution, it came to light that Davis made statements to officers at the hospital, to another

officer while being transported to the courthouse for a hearing, and to two ATF Task Force

agents.   Davis told them all that he attempted to get rid of the weapon while he was running.

Davis pleaded guilty to felony possession of a firearm.  During his change of plea hearing, Davis

stated "I possessed a handgun knowing I was a felon."

In the Pretrial Order and Davis's deposition, Davis denies possessing a weapon, and

claims that Officer McCarter used excessive force during and after his apprehension in violation

of the Fourth Amendment.  Officer McCarter argues that Davis is prohibited from asserting that

he did not have a weapon during the chase.  The Court will discuss this issue before turning to

the summary judgment motion.

### A.      Judicial Estoppel

"The doctrine of judicial estoppel is based upon protecting the integrity of the judicial

system by 'prohibiting parties from deliberately changing positions according to the exigencies

of the moment.'"[1]  Courts typically consider three factors in determining whether judicial

estoppel should apply to a particular case.[2]  The first inquiry is "whether a party's later position

is clearly inconsistent with its earlier position."[3]  The second inquiry is "whether a party has

persuaded a court to accept that party's earlier position, so that judicial acceptance of an

inconsistent position in a later proceeding would create 'the perception that either the first or the

---

[1]*Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

[2]*Id.*

[3]*Id.*

second court was misled.'"[4]  Finally, the court should inquire "whether the party seeking to

assert the inconsistent position would derive an unfair advantage if not estopped."[5]  Additionally,

judicial estoppel must be applied with caution "'[b]ecause of the harsh results attendant with

precluding a party from asserting a position that would normally be available to the party.'"[6]

These factors favor estopping Davis from asserting that he did not have a gun at the time

in question.  First, Davis's current position is inconsistent with his plea of guilty to a charge of

felon in possession of a firearm.  At his change of plea hearing, Davis said, "I possessed a

handgun knowing I was a felon."  This is clearly contradictory to his current assertion that he did

not possess a handgun.  Second, like the court in *Bradford v. Wiggins* noted, if this Court were to

accept Davis's position that he did not possess a gun, then his conviction for possession of a

firearm by a prohibited person would be in question.  At Davis's plea hearing, Davis's counsel

agreed with the prosecutor's rendition of the factual basis of the offense; "[o]n November 10,

2004, in the District of Kansas, Mr. Davis, having previously been convicted of a felony,

possessed the firearm named in the indictment, and that the firearm had traveled in interstate

commerce."[7]

Finally, Officer McCarter asserts that Davis gained a benefit by entering a guilty plea

because he avoided a jury trial that could have resulted in the maximum sentence of ten years, a

$250,000 fine, and a three year term of supervised release.  The Court declines to speculate

about what would have happened had Davis not pled guilty.  The Court disagrees with Officer

---

[4]*Id* (quoting *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005)).

[5]*Id.*

[6]*Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)).

[7](*U.S. v. Davis*, Case No. 04-40153-01, Transcript of Change of Plea Hearing, p.12).

McCarter's assertion that Davis gained a benefit by pleading guilty, as the benefit to be gained is

in the current action.  It is obvious to the Court that the benefit in changing his story is a better

claim for excessive force.  Needless to say, the facts are not as Davis now claims and judicial

estoppel is warranted.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[8]  A fact is only material under this standard if a dispute over it would affect the outcome

of the suit.[9]  An issue is only genuine if it "is such that a reasonable jury could return a verdict

for the nonmoving party."[10]  The inquiry essentially determines if there is a need for trial, or

whether the evidence "is so one-sided that one party must prevail as a matter of law."[11]

The moving party bears the initial burden of providing the court with the basis for the

motion and identifying those portions of the record that show the absence of a genuine issue of

material fact.[12]  "A movant that will not bear the burden of persuasion at trial need not negate the

nonmovant's claim."[13]  The burden may be met by showing that there is no evidence to support

---

[8]Fed. R. Civ. P. 56(c).

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[10]*Id.*

[11]*Id.* at 251–52.

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

the nonmoving party's case.[14]  If this initial burden is met, the nonmovant must then "go beyond

the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant."[15]  When examining the

underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light

most favorable to the nonmoving party and that it may not make credibility determinations nor

weigh the evidence.[16]

This standard is somewhat modified in an unopposed motion for summary judgment.  "It

is improper to grant a motion for summary judgment simply because it is unopposed."[17]  This

will be the case where the movant fails to make out a prima facie case for summary judgment.[18]

It is the role of the court to ascertain whether the moving party has sufficient basis for judgment

as a matter of law.[19]  In so doing, the court must be certain that no undisclosed factual dispute

would undermine the uncontroverted facts.[20]

The summary judgment standard must also be read in conjunction with D. Kan. Rule 7.4,

which instructs that a "failure to file a brief or response within the time specified . . . shall

---

[14]*Id.*

[15]*Id.*

[16]*See Scott v. Harris*, —U.S.—, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[17]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[18]*Id.* (citations omitted).

[19]*Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[20]*Id.*

constitute a waiver of the right thereafter to file such brief or response . . . . "[21]  Further, if a

"respondent fails to file a response within the time required . . . the motion will be considered

and decided as an uncontested motion and ordinarily will be granted without further notice."[22]

## III.    Discussion

In an action under 42 U.S.C. § 1983, a suit against a government official may be made to

impose individual liability for actions taken under color of state law.[23]  In order to establish

individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under

color of state law, caused the deprivation of a federal right."[24]  An official sued in his individual

capacity may assert qualified immunity,[25] which is immunity from suit, rather than a mere

defense to liability.[26]  "Because qualified immunity is effectively lost if a case is permitted to go

to trial, 'it should be resolved as early as possible.'"[27]

Upon a defendant's assertion of a qualified immunity defense, plaintiff has a two-part

burden.  First, plaintiff must allege facts showing that the official's conduct violated a

constitutional right.[28]  If a violation is shown, "'the next, sequential step is to ask whether the

---

[21]D. Kan. R. 7.4.

[22]*Id*.

[23]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[24]*Id.*

[25]*Id.*

[26]*Meacham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[27]*Id.* (quoting *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000)).

[28]*Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

right was clearly established.'"[29]  The issue of immunity is a legal one and the Court may not

avoid it by framing it as a factual issue.[30]  The Supreme Court counsels that before addressing

the issue of qualified immunity, the Court must first consider, "[t]aken in the light most

favorable to the party asserting the injury, [whether] the facts alleged show the officer's conduct

violated a constitutional right?"[31]

Davis alleges that Officer McCarter violated his Fourth Amendment right by using

excessive force, deadly force, while attempting to apprehend him, and by hitting Davis in the

face and neck while Davis was lying on the ground.  A claim of excessive force in the course of

seizing a person is analyzed under the Fourth Amendment's objective reasonableness standard.[32]

This standard requires the court to "'balance the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion.'"[33]  Among other factors, the court should look to "(1) whether

the victim was suspected of a crime, (2) the severity of the crime, (3) whether the suspect was

armed, (4) the suspect's compliance with police commands, and (5) the danger created by the

encounter."[34]  "The Fourth Amendment standard requires police conduct to be objectively

reasonable in light of the facts and circumstances surrounding the defendants irrespective of their

---

[29]*Id.* (quoting *Saucier*, 533 U.S. at 201).

[30]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

[31]*Saucier*, 533 U.S. at 201; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[32]*Scott v. Harris*, — U.S. —, 127 S. Ct. 1769, 1776 (2007) (internal quotation omitted).

[33]*Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

[34]*Williams v. Berney*, 519 F.3d 1216, 1221 (10th Cir. 2008) (citing *Estate of Larsen ex rel Sturdivan v. Murr*, 511 F.3d 1255, 1259-61 (10th Cir. 2008)).

underlying intent or motivation."[35]  "Reasonableness must be viewed from the vantage point of

the defendants on the scene."[36]  "The court cannot, in the serenity of its chambers, apply 20/20

hindsight in determining the reasonableness of the defendants' actions."[37]  Furthermore, "to

successfully state an excessive force claim, the plaintiff must establish that he suffered

significant injury or that the defendant's actions were sufficiently reprehensible."[38]

The Court finds little difficulty in determining that Officer McCarter's use of deadly

force to apprehend Davis was justified under the circumstances.  Davis was already acting with

disregard for the community by running stop signs and crossing the center lane during the car

chase.  Then, when the chase turned into a foot chase, Davis was running through a residential

neighborhood holding a gun.  Officer McCarter had been taught that action is faster than reaction

and was certainly not expected to wait until Davis had actually fired his weapon at him, his

partner, or an innocent bystander to take reasonable steps to stop him from doing so.  Under the

circumstances it was reasonable for Officer McCarter to use deadly force to prevent Davis from

locating cover and shooting at Officer McCarter and his partner, as Officer McCarter suspected

he was planning to do.[39]  Davis acknowledges that Officer McCarter ordered him to stop and

drop his gun several times, but that he did not comply and kept running with his gun in his hand.

Davis was given several chances to obey the officers and avoid being shot, yet he refused to do

---

[35]*Pride v. Kan. Highway Patrol*, 481 F. Supp. 279, 281 (D. Kan. 1992) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992)).

[36]*Id.*

[37]*Id.*

[38]*Id.* at 282 (citing *Frohmader*, 958 F.2d at 1026).

[39](McCarter Aff. Para. 13& 16).

so.

Furthermore, Davis's story about what he intended to do with the gun has been

inconsistent.  As the Tenth Circuit noted,

> Although Mr. Davis stated that he brought the gun from his car
> merely to dispose of it, we note that Mr. Davis was seen throwing
> 'baggies' out of the window while driving, which demonstrates an
> earlier opportunity to discard the firearm if that was in fact his
> wish.  In our view, the reasonable implication of Mr. Davis' choice
> to dispose of the baggies first and hold onto the gun until later is
> that he anticipated a further purpose for the gun.[40]

Regardless of Davis's subjective intent for having a gun, it is clear that Officer McCarter had

probable cause to believe that Davis intended to use it.  Clearly, being shot is a significant

intrusion; however, the government's interest in the safety of officers and innocent bystanders

justifies the intrusion.[41]  Therefore, Officer McCarter did not violate Davis's Fourth Amendment

right by using deadly force to apprehend Davis, because he had probable cause to believe that

Davis posed a threat of serious physical harm to others when he continued to flee from the police

while armed.

As to Davis's claim that he was struck by McCarter after he was apprehended, the Court

finds that the single blow which was treated with ice after the incident is not enough to establish

a Fourth Amendment violation.  Taking Davis's allegations as true that he was struck by Officer

McCarter while he was on the ground does not rise to the level of a Fourth Amendment

---

[40]*United States v. Davis*, 189 Fed. App'x 824, 827 (10th Cir. 2006).

[41]*See Brousseau v. Haugen*, 543 U.S. 194, 197-98 (2004) ("[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.").

violation.[42]  Finding no constitutional violation, the Court need not proceed to the remaining

questions under the qualified immunity analysis and summary judgment is granted in

defendant's favor.

        **IT IS THEREFORE ORDERED BY THE COURT** that defendant Brad McCarter's

Motion for Summary Judgment (Doc. 40) is **GRANTED**.  Plaintiff's action is dismissed.

        **IT IS SO ORDERED.**

        Dated this 5th day of August 2008

                                        **S/ Julie A. Robinson**
                                        **Julie A. Robinson**
                                        **United States District Judge**

Memorandum and Order in *Thomas Canal Davis v. Brad McCarter*, et. al., 06-3320-JAR.

---

[42]*See Cortez v. McCauley*, 478 F.3d 1108, 1126-27 (10th Cir. 2007) (dismissing an excessive force claim based on being pulled through a doorway and being handcuffed too tight); *Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001) (finding that plaintiff's claim that officer kicked him "very hard" while making arrest did not violate the Fourth Amendment).